1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES ABEL,

11          Plaintiff,                    No. 2:09-cv-1749 JAM CKD P

12      vs.

13   MIKE MARTEL, et al.,

14          Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a California prisoner proceeding pro se.  Defendants Martel, Long,

17   Sauceda, Lackner and Childress (defendants) are current or former employees of the California

18   Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison (Mule Creek).

19   Plaintiff's remaining claims against defendants arise under the First Amendment and the

20   Religious Land Use and Institutionalized Persons Act (RLUIPA).  They concern plaintiff's

21   practice of "Wicca"[1] while plaintiff was housed at Mule Creek.  Defendants' motion for

22   summary judgment is before the court.

23   /////

24   /////

25   _____

26       [1]  According to Wikipedia, "Wicca, also known as Pagan Witchcraft, is a Pagan religious movement."

1

1    I. <u>Summary Judgment Standard</u>

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5          Under summary judgment practice, the moving party

6          always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
7          pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
8          demonstrate the absence of a genuine issue of material fact.

9    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12   to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

13   after adequate time for discovery and upon motion, against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on which that

15   party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof

16   concerning an essential element of the nonmoving party's case necessarily renders all other facts

17   immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

18   whatever is before the district court demonstrates that the standard for entry of summary

19   judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

20         If the moving party meets its initial responsibility, the burden then shifts to the

21   opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

22   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of this factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25   form of affidavits, and/or admissible discovery material, in support of its contention that the

26   dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

2

1   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6   1436 (9th Cir. 1987).

7          In the endeavor to establish the existence of a factual dispute, the opposing party

8   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

1   II.   Plaintiff's Remaining Claims

2           In an order issued February 23, 2012, the district court judge assigned to this case

3   identified plaintiff's remaining claims as follows:

4           1.  Defendants Martel, Lackner and Long denied plaintiff the ability to purchase

5   and personally possess religious items which were approved in the "Technical Reference

6   Manual" (TRM)[2] for group worship only, in violation of the First Amendment and RLUIPA.

7           2.  On April 27, 2009, defendants Sauceda and Childress confiscated religious

8   items from plaintiff in violation of the First Amendment and RLUIPA.[3]

9   III.   RLUIPA

10          Defendants assert they are entitled to summary judgment with respect to

11  plaintiff's claims arising under RLUIPA because plaintiff can not obtain damages if he prevails

12  on his claims and because he does not seek injunctive relief.

13          State employees, such as defendants, cannot be sued in their official capacities

14  under RLUIPA for damages as the State of California has not waived Eleventh Amendment

15  immunity with respect to such claims.  Holley v. Cal. Dep't of Corrections, 599 F.3d 1108, 1114

16  (9th Cir. 2010).

17          Neither the United States Supreme Court nor the Ninth Circuit has addressed

18  whether a plaintiff may recover damages under RLUIPA from a state employee acting in his

19

20          [2]  According to defendant Martel, the Federal Bureau of Prisons Technical Reference
     Manual is utilized by CDCR in determining which religious items should be made available to
21   inmates.  Mot. for Summ. J., Ex. A at 2.

22          [3]  Plaintiff's opposition to defendants' motion for summary judgment consists of 434
     pages of argument and exhibits.  Most of plaintiff's argument and exhibits are not relevant to the
23   claims remaining before the court which were specifically identified for plaintiff in this court's
     November 18, 2011 findings and recommendations and the district court's February 23, 2012
24   order.  Any claim other than the two specifically identified were dismissed in the February 23,
     2012 order for failure to exhaust administrative remedies.  On page 21 of his opposition, plaintiff
25   indicates he was not able to cite cases in support of his arguments because he spent his three
     allotted days in the prison law library making copies.  Given all of the irrelevant material
26   submitted, the court cannot find that the amount of law library time given to plaintiff was
     inadequate.

individual capacity.  However, the Third, Fourth, Fifth, Seventh, Tenth and Eleventh Circuits have all found that plaintiffs may not.  See Stewart v. Beach 701 F.3d 1322, 1333-35 (10th Cir. 2012); Sharp v. Johnson, 669 F.3d 144, 153 (3rd Cir. 2012); Rendleman v. Rousse, 569 F.3d 182, 187-89 (4th Cir. 2009); Sossamon v. Lone Star State of Tex., 500 F.3d 316, 327-28 & n. 23 (5th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 889 (7th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272-27 (11th Cir. 2007).[4]  Essentially, all of these courts acknowledge that RLUIPA was enacted by Congress pursuant to its spending power granted under Article I of the Constitution and that Congress's spending power cannot be used to subject individual defendants to liability. See Stewart, 701 F.3d at 1333-35.  Plaintiff fails to convince the court that it should diverge from the opinions identified above.

Further, defendants are correct that plaintiff does not seek injunctive relief in his amended complaint; he makes neither a general request for injunctive relief, nor a request for a specific form of injunctive relief.  In addition, as indicated above, all of the remaining defendants in this case are either current or former employees at Mule Creek.  As plaintiff is no longer housed there, injunctive relief against any of the defendants in this action would not be appropriate.  Finally, the transfer of a prisoner generally moots any claim for injunctive relief unless plaintiff demonstrates a reasonable expectation of return to the prison where the claims arose.  See e.g. Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).  Plaintiff has not shown that he has a reasonable expectation of return to Mule Creek.

For all the foregoing reasons, the court will recommended that defendants be granted summary judgment with respect to plaintiff's remaining claims arising under RLUIPA.

/////

/////

/////

---

[4]  No Circuit Court has found that plaintiffs can recover damages from defendants sued in their individual capacities under RLUIPA.

III.   First Amendment

    A.   Claim 1

        Plaintiff alleges that his rights arising under the First Amendment were violated by defendants Martel, Lackner and Long when they denied him the ability to purchase and personally possess certain religious items which had been approved under the TRM for group use by Wiccans.  Am. Compl. at 4-5.  In analyzing First Amendment free exercise of religion claims, the court first asks whether government has placed a substantial burden on the observation of a central religious belief or practice.  Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699 (1989).

        The primary problem with plaintiff's defense of claim 1 is that plaintiff fails to point to any evidence indicating defendants Martel, Lackner or Long ever actually denied plaintiff the ability to purchase any religious items for personal use that had been approved only for group use in the TRM, nor is there anything in the evidence presented by defendants suggesting as much.[5]  While defendants all indicate that had plaintiff made a request to personally possess items only approved for group use in the TRM to them, that request would have been denied, Mot. for Summ. J., Ex. A at 4; B at 3-4 & C at 3, this alone cannot form the basis of an actionable claim against Martel, Lackner or Long because it cannot be said that any of them actually denied plaintiff his First Amendment rights or caused plaintiff any injury resulting from that denial.  See Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999) (causation is an element of a § 1983 claim).

---

    [5]  On May 28, 2008, plaintiff submitted a grievance requesting that Wiccan inmates at Mule Creek be allowed to purchase items they feel are "necessary implements of [their] faith." Opp'n, Ex. D at 2.  In the grievance, plaintiff fails to identify any specific items he had been denied.  He does indicate that some Wiccans had been denied the ability to purchase items because those items had been approved only for group use in the TRM.  Id. at 5.  The second level response to the grievance came from the office of defendant Martel, who at that time was the Warden at Mule Creek.  Opp'n, Ex. D at 6-7.  But review of the response indicates that defendant Martel himself did not draft the response.  Liability under 42 U.S.C. §1983 arises only upon a showing of personal participation by the defendant; there is no respondeat superior liability.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

1   For these reasons, plaintiff has not established that a genuine issue of material fact

2   remains as to whether his right to free exercise of his religion was violated by defendants Martel,

3   Lackner and Long.  Accordingly, they are entitled to summary judgment.

4   B.  Claim 2

5   In his first amended complaint, plaintiff alleges that in April 2009, defendants

6   Sauceda and Childress confiscated, and later destroyed, several religious items belonging to

7   plaintiff including three decorative ceremonial wands, a crystal and two chalices.[6]

8   Defendants point to evidence indicating that on April 27, 2009, Sauceda and

9   Childress conducted a routine cell search of plaintiff's cell.[7]  During the search they confiscated

10  certain items plaintiff had not been authorized to possess including decorated wooden sticks

11  crafted from rose bush branches with "sharpened" crystals affixed to them and two "altered" state

12  issued drinking cups.  Sauceda and Childress assert the wooden sticks could have been used as

13  weapons.  Plaintiff asserts the crystals affixed to the rose bush branches were not "sharpened"

14  and that it is not possible to do so.  Opp'n at 3.  Defendants provide pictures of all of the items

15  confiscated, including what appears to be a crystal, but defendants do not otherwise acknowledge

16  that they confiscated a crystal.  Mot. for Summ. J., Ex. D at 5-6.  It does appear that the crystals

17  attached to the rose bush branches are pointy and could be used as weapons.

18  Defendants assert the items were properly confiscated as "altered" items pursuant

19  to Cal. Code Regs. tit. 15, § 3006.  That regulation provides that inmates may possess only

20

21   [6] In his opposition to defendants' motion for summary judgment, plaintiff indicates
22  Sauceda and Childress also confiscated a religious book called a "book of shadows."  Opp'n at 9.
    However, in his amended complaint, plaintiff asserts the "book of shadows" was taken by
22  "Captain Kaplan" in July of 2009.  Am. Complt. at 8-9.  Furthermore, in the prisoner grievance
23  plaintiff submitted regarding the April 27, 2009 search conducted by Sauceda and Childress,
    plaintiff did not mention that a "book of shadows" had been taken.  The only religious items
24  mentioned were "three decorative ceremonial wands, two chalices and a crystal."  May 11, 2011
    Mot. to Dismiss, Decl. of D. Foston, Ex. C at 9.
25

26   [7] The declarations of defendants Sauceda and Childress are attached to defendants'
    motion for summary judgment as exhibits D & E.

7

1  property received or obtained from an authorized source.   Defendants also claim the "wands"

2  were confiscated pursuant to Cal. Code Regs. tit. 15, § 3006(d) because the items presented a

3  serious threat to security and safety.   Defendants Sauceda and Childress assert that when they

4  searched plaintiff's cell on April 27, 2009, they did not know plaintiff, nor were they aware of his

5  religious affiliation.   Further, plaintiff did not have special permission to possess the "wands" or

6  "chalices."  Plaintiff fails to point to anything suggesting otherwise, nor does he dispute that the

7  items at issue were contraband under CDCR regulations.

8          1. <u>Crystal</u>

9          Again, in analyzing First Amendment free exercise of religion claims, the court

10  starts by asking whether government has placed a substantial burden on the observation of a

11  central religious belief or practice.   <u>Hernandez</u>, 490 U.S. at 699.  While defendants do not

12  acknowledge taking a crystal from plaintiff's cell (not attached to a rose bush branch), the court

13  assumes they did since plaintiff alleges as much and there does appear to be a picture of a crystal

14  included with the pictures of the items confiscated.  Even so, plaintiff fails to point to anything

15  suggesting that confiscation of a single crystal from his cell substantially burdened plaintiff's

16  practice of his religion.   See <u>e.g.</u> <u>Rapier v. Harris</u>, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (de

17  minimis burdens on the free exercise of religion are not of a Constitutional dimension).

18          2. <u>"Wands" and "Chalices"</u>

19          While plaintiff disputes that the crystals at the end of his "wands" were sharpened

20  by him, pictures of the items indicate that they are in fact pointed at the exposed end.  No matter

21  the burden placed on the exercise of plaintiff's religion, confiscation of the "wands" did not

22  amount to a violation of plaintiff First Amendment right as keeping weapons and weapon making

23  material out of the hands of prisoners furthers every prison's primary objective of safety for all

24  within the prison walls.   See <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736 (1997) (First Amendment

25  right to free exercise of religion must generally give way to regulations which are reasonably

26  related to interests concerning the care of committed persons).

1    Also, it is not disputed that the items identified by plaintiff as "wands" and

2    "chalices" were contraband under CDCR regulations as they were not obtained from authorized

3    sources and plaintiff did not obtain permission to possess the items.  Defendants assert the

4    defense of "qualified immunity" with respect to confiscation of these items.  Pursuant to the

5    qualified immunity defense, government officials performing discretionary functions generally

6    are shielded from liability for civil damages insofar as their conduct does not violate clearly

7    established statutory or constitutional rights of which a reasonable person would have known.

8    Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer

9    is immune from suit based on the doctrine of qualified immunity, the court must answer two

10   questions.  The first is whether the officer's conduct violated a constitutional right.  Saucier v.

11   Katz, 533 U.S. 194, 201 (2001).  The second is "whether the right was clearly established," id.,

12   and it is plaintiff's burden to show that it was, Alston v. Reed, 663 F.3d 1094, 1098 (9th Cir.

13   2011).  A negative answer to either question means immunity from suit is appropriate.  Pearson

14   v. Callahan, 555 U.S. 223, 236 (2009).

15   Any liability Sauceda and Childress may have for confiscating plaintiff's "wands"

16   and "chalices" would not be based on a clearly established Constitutional right.  In order for

17   defendants' qualified immunity defense to fail at this stage, the court would have to find that

18   when Sauceda and Childress took plaintiff's "wands" and "chalices," it would have been clear to

19   a reasonable correctional officer that a violation of plaintiff's First Amendment rights was

20   occurring.  Even assuming defendants Sauceda and Childress knew the "wands" and "chalices"

21   were "Wiccan" items when they confiscated them, there is no law indicating that knowledge that

22   personal property may have religious significance precludes a correctional officer from

23   confiscating the property if the property is contraband under general prison regulations,[8] the

24

25   [8] This is not to say that enforcing a prison rule or regulation would always provide a
     basis for qualified immunity.  If a reasonable correctional officer would know that the regulation
26   enforced violated clearly established federal law, enforcement could still subject the officer to
     liability.  See e.g. Cal. Attorneys for Crim. Justice v. Butts, 195 F.3d 1039, 1049 (9th Cir. 1999)

1  prisoner had not obtained special permission to possess the property, and the prisoner had not

2  informed the officer of the precise religious significance of the property.

3  IV.  Conclusion

4     For all of the foregoing reasons, the court will recommend that defendants'

5  motion for summary judgment be granted, defendants Martel, Long, Sauceda, Lackner and

6  Childress be dismissed, and this case be closed.

7     Accordingly, IT IS HEREBY RECOMMENDED that:

8     1.  Defendants April 2, 2012 motion for summary judgment (Dkt. No. 52) be

9  granted;

10     2.  Defendants Martel, Long, Sauceda, Lackner and Childress be dismissed; and

11     3.  This case be closed.

12     These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within fourteen days after service of the objections.  The parties are

18  advised that failure to file objections within the specified time may waive the right to appeal the

19  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20   Dated: February 13, 2013

21

22        CAROLYN K. DELANEY
      UNITED STATES MAGISTRATE JUDGE

23  [1]
abel1749.57(2)

24

25

26  (reliance on training materials not basis for granting qualified immunity when materials conflicted with commands of Miranda).

10